**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X          **Case No. 18-CV-1956**

KAREN THOMAS-OUBSSIS,

                               Plaintiff,          <u>**COMPLAINT**</u>

              - against -          **PLAINTIFF DEMANDS**
                                        **A TRIAL BY JURY**

THE CITY OF NEW YORK,
NEW YORK CITY DEPARTMENT OF EDUCATION,
JAYE MURRAY, *Individually*,
VINCENT GASSETTO, *Individually*,
JUDITH BELLIARD, *Individually*, and
CHRISANNE PETRONE, *Individually*,

                               Defendants.

-------------------------------------------------------------------------X

        Plaintiff, KAREN THOMAS-OUBSSIS, by her attorneys, LAW OFFICE OF YURIY

MOSHES, P.C., hereby complains of the Defendants, upon information and belief, as follows:

<u>**NATURE OF THE CASE**</u>

1.     Plaintiff complains pursuant the <u>Americans with Disabilities Act of 1990</u>, 42 U.S.C. §

     12101, *et seq.* ("ADA") and the <u>New York City Human Rights Law</u>, New York City

     Administrative Code § 8-502(a), *et. seq.* ("NYCHRL")*,* and seeks damages and injunctive

     relief to redress the injuries Plaintiff has suffered as a result of being **Discriminated**

     <u>**against**</u> by her employer, **Denied Reasonable Accommodations** for her **Disability**

     <u>**(Epilepsy)**</u>, and **Retaliated Against** for complaining of disability discrimination.

<u>**JURISDICTION AND VENUE**</u>

2.     Jurisdiction of this Court is proper under 42 U.S.C. §12101 *et. seq.*, and 28 U.S.C. §§

     1331 and 1343.

3.    The Court has supplemental jurisdiction over the claims of Plaintiff brought under state law pursuant to 28 U.S.C. §1367.

4.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b), as Defendants reside within the Southern District of New York, and the acts complained of occurred therein.

## PROCEDURAL PREREQUISITES

5.    Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6.    Plaintiff received a Notice of Right to Sue from the EEOC, dated February 20, 2018, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7.    This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

## PARTIES

8.    That at all times relevant hereto, Plaintiff KAREN THOMAS-OUBSSIS ("THOMAS-OUBSSIS") is a resident of the State of New York and County of Bronx.

9.    That at all times relevant hereto, Plaintiff THOMAS-OUBSSIS has been a qualified individual with a disability (Epilepsy).

10.   At all times material, Defendant THE CITY OF NEW YORK ("CITY") is a municipal corporation organized and existing as such under and by the virtue of the laws of the State of New York.

11.   That at all times relevant hereto, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") is a department subdivision of Defendant CITY and is a municipal entity duly organized and existing under and by the virtue of the laws of the State of New York.

12.     At all times material, Defendant CITY operated, maintained, controlled and supervised Defendant NYCDOE.

13.     That at all times relevant hereto, Plaintiff THOMAS-OUBSSIS has been an employee of Defendant CITY and Defendant NYCDOE.

14.     Upon information and belief, at all times material, Defendant JAYE MURRAY ("MURRAY") is an employee of Defendant CITY and Defendant NYCDOE, holding the position of "Executive Director of the Office of Counseling Support Programs."

15.     That at all times relevant hereto, Defendant MURRAY is Plaintiff THOMAS-OUBSSIS's supervisor and/or has supervisory authority over Plaintiff THOMAS-OUBSSIS.

16.     Upon information and belief, at all times material, Defendant VINCENT GASSETTO ("GASSETTO") is an employee of Defendant CITY and Defendant NYCDOE, holding the position of "MS 343 Principal."

17.     That at all times relevant hereto, Defendant GASSETTO is Plaintiff THOMAS-OUBSSIS's supervisor and/or has supervisory authority over Plaintiff THOMAS-OUBSSIS.

18.     Upon information and belief, at all times material, Defendant JUDITH BELLIARD ("BELLIARD") is an employee of Defendant CITY and Defendant NYCDOE, holding the position of "District Coordinator, School District 7."

19.     That at all times relevant hereto, Defendant BELLIARD is Plaintiff THOMAS-OUBSSIS's supervisor and/or has supervisory authority over Plaintiff THOMAS-OUBSSIS.

20.     Upon information and belief, at all times material, Defendant CHRISANNE PETRONE

("PETRONE") is an employee of Defendant CITY and Defendant NYCDOE, holding the position of "Program Manager of Single Shephard at Central Office at DOE."

21.   That at all times relevant hereto, Defendant PETRONE is Plaintiff THOMAS-OUBSSIS's supervisor and/or has supervisory authority over Plaintiff THOMAS-OUBSSIS.

22.   That at all times relevant hereto, Defendant CITY, Defendant NYCDOE, Defendant MURRAY, Defendant GASSETTO, Defendant BELLIARD, and Defendant PETRONE are collectively referred to herein as "Defendants."

## MATERIAL FACTS

23.   In or around September 2016, Plaintiff THOMAS-OUBSSIS began working for Defendants as a "Guidance Counselor" in their Single Shephard program, earning approximately $71,418.00 per year.

24.   A Single Shepherd is a mentor who listens to, advocates for, and supports students in making academic and personal choices.  The goal of the Single Shepherd program is to pair every middle and high school student grades 6 – 12 in Districts 7 and 23 with a dedicated school counselor who will support them through graduation and college enrollment.

25.   As a "Single Shepherd Guidance Counselor," Plaintiff THOMAS-OUBSSIS is responsible for counseling students individually and in small groups to support their academic achievement, social-emotional development, and postsecondary planning; engaging parents in postsecondary planning via parent workshops, newsletters, as well as individual and group sessions; presenting at faculty conferences to ensure that all staff

members engage in goal setting with students; facilitating career interest inventories, and cohort events including college visits, Career Day, or Adopt-a-College; and engaging community-based organizations and alumni to support the development of school cultures that expect college access and attendance for all students.

26. From in or around September 2016 through in or around June 2017, Defendants placed Plaintiff THOMAS-OUBSSIS in the South Bronx Academy for Applied Media (MS 296), located at 778 Forest Avenue, Bronx, NY 10456.

27. Throughout Plaintiff THOMAS-OUBSSIS's employment, Plaintiff THOMAS-OUBSSIS has been an exemplary employee, has never been disciplined, and has always received compliments for her work performance.

28. However, everything changed in or around September 2017 when Defendants transferred Plaintiff THOMAS-OUBSSIS to a new school and began to consistently discriminate against her due to her disability and refuse to provide Plaintiff THOMAS-OUBSSIS with reasonable accommodations for her disability.

29. By way of background, in or around September 2017, Defendants transferred Plaintiff THOMAS-OUBSSIS to the Academy of Applied Mathematics and Technology (MS 343), located at 345 Brook Avenue, Bronx, NY 10454.

30. From her first day working at MS 343, Plaintiff THOMAS-OUBSSIS has shared an office with three (3) other employees – Marisol Palau (MS343 Counselor), Bridget Latopolski (Single Shepherd School Social Worker), and Angie Pashalis (Single Shepherd School Social Worker).

31. Upon starting at MS 343, Plaintiff THOMAS-OUBSSIS informed Defendants of her disability (Epilepsy) and advised everyone that she cannot be exposed to loud noises

and/or dimly lit rooms that cause her to strain her eyes, as they can trigger an epileptic seizure.

32. Nevertheless, on or about October 13, 2017, Plaintiff THOMAS-OUBSSIS's officemate, Marisol Palau, began to constantly play extremely loud country music and continuously turn the lights off in the office. Although Plaintiff THOMAS-OUBSSIS incessantly pleaded with Marisol Palau to turn off the music and stop lowering the lights due to her disability, Marisol Palau always refused, continued to play loud music, and continued to turn the lights off.

33. As a result, on or about October 26, 2017 at approximately 11:25am, as a result of the loud music and lack of light, **Plaintiff THOMAS-OUBSSIS suffered an epileptic seizure at work** and was transported to Montefiore Medical Center by ambulance.

34. On or about October 28, 2017, on behalf of Plaintiff THOMAS-OUBSSIS, her neurologist, Renee S. Monderer, MD, faxed Defendant PETRONE and Defendant GASSETTO a letter in which Dr. Monderer not only cleared Plaintiff THOMAS-OUBSSIS "to return to work on October 30th, 2017," but also requested, as a **reasonable accommodation for her disability**, that Plaintiff THOMAS-OUBSSIS "not be placed in a loud or crowded environment which can trigger her seizures."

35. Plaintiff THOMAS-OUBSSIS knew that this accommodation posed **no undue burden** to Defendants, as all Defendants would need to do was make sure that Marisol Palau ceased playing extremely loud music in the office and cease turning the lights off. Since the music had absolutely no connection to Ms. Palau's job duties, it should not have even been an issue. In fact, Plaintiff THOMAS-OUBSSIS never expected Defendants to ignore her requests and/or blatantly refuse to accommodate her disability. However, this

is exactly what occurred.

36.     Concerned that she never heard back from Defendants regarding her accommodation request, on or about October 30, 2017, Plaintiff THOMAS-OUBSSIS went to Defendant GASSETTO's office and confirmed with his secretary, Ms. Ingrid, that Defendant GASSETTO received the letter from her doctor.  Unfortunately, Defendant GASSETTO nonetheless failed to address this request in any fashion, thereby allowing Marisol Palau to continue to play loud music in the office.

37.     As such, on or about October 31, 2017, at 6:49am, Plaintiff THOMAS-OUBSSIS sent an email to Defendant GASSETTO in which she stated:

> My doctor faxed a letter to you and Ms. Ingrid told me that she received it. I believe it was a general letter of what needs to be avoided right now since I just had a seizure. … The accommodations I am requesting due to my epilepsy are:  1. Reduced exposure to excessive loud noise, such as being in the cafeteria for extensive amounts of time (as we discussed previously and you agreed to with no problem). 2. No prolonged or excessive use of the computer for excessive input of data or allowing me extra time to input the data since prolonged computer use can cause seizures. 3. No exposure to loud music or poor lighting in the room/office.

However, Defendant GASSETTO continued to ignore Plaintiff THOMAS-OUBSSIS and never even bothered to respond to her email.

38.     Due to not receiving any response, later that same day, at 12:32pm, Plaintiff THOMAS-OUBSSIS forwarded the same email to Defendant PETRONE and Defendant BELLIARD, hoping to receive some kind of response from them.  Unfortunately, she did not.

39.     Accordingly, the following day, on or about November 1, 2017, Plaintiff THOMAS-OUBSSIS sent yet another email to Defendant GASSETTO requesting the same accommodations that she had previously requested.  However, just like before, Defendant

GASSETTO ignored Plaintiff THOMAS-OUBSSIS's email and refused to respond to Plaintiff THOMAS-OUBSSIS's request for reasonable accommodations.

40. In fact, the next day, on or about November 2, 2017, Plaintiff THOMAS-OUBSSIS saw Defendant GASSETTO in the hallway, and while she confirmed with him that he received all of her emails and requests, he still refused to take any action in furtherance of getting Plaintiff THOMAS-OUBSSIS the accommodations she so desperately needed.

41. Since Defendants continued to put Plaintiff THOMAS-OUBSSIS's health in jeopardy by refusing to prevent Marisol Palau from playing exceptionally loud music and turning the lights off, on or about November 6, 2017, Plaintiff THOMAS-OUBSSIS's doctor, Renee S. Monderer, MD, sent another letter, via facsimile, to Defendant GASSETTO stating, "[Plaintiff THOMAS-OUBSSIS] should not be placed in a loud (including music) or crowded environment which can trigger her seizures.  She would like reduced amount of time on the computer or extended time to submit any work that is needed to be done on the computer."  Not surprisingly, Defendant GASSETTO again wholly failed to respond in any way to this accommodation request.  Plaintiff THOMAS-OUBSSIS was absolutely distraught that Defendants were not only refusing to provide her with any accommodations for her disability, but were also refusing to even respond to Plaintiff THOMAS-OUBSSIS's requests.

42. This meant that each time Marisol Palau began singing and playing her loud music and/or turning the lights on and off, Plaintiff THOMAS-OUBSSIS had no choice but to remove herself from the toxic environment and lose hours of work.

43. Not knowing what else to do, also on or about November 6, 2017, Plaintiff THOMAS-OUBSSIS sent an email to Defendant BELLIARD in which she stated:

> [Defendant GASSETTO] never responded to my emails.  I sent him an email on the 31st of October and another email on November 1, 2017.  My doctor faxed a letter to him on October 30, 2017 and I believe she faxed another letter that was more detailed today.  Despite all of these requests for accommodations (which are not complicated in nature) my emails and requests have all been ignored.  I am sure my disability rights have been violated.  Since returning to work, I have been exposed to blasting country music on a regular basis in the office (RM 233).  This had caused me to leave the room on several occasions because I was afraid I was going to have another seizure….  [Defendant GASSETTO] has shown a lack of concern regarding my requests for accommodations due to my epilepsy.

44. On or about November 9, 2017, Plaintiff THOMAS-OUBSSIS met with Defendant BELLIARD and Defendant MURRAY during which Defendant MURRAY told Plaintiff THOMAS-OUBSSIS, "So I hear you are allergic to country music.  [Defendant GASSETTO] does not have to respond to your emails requesting an accommodation.  You are coming across like the victim and are letting [Marisol Palau] get to you."  Plaintiff THOMAS-OUBSSIS was outright shocked and humiliated to hear this, as it not only appeared that Defendants were overtly refusing to even try to accommodate Plaintiff THOMAS-OUBSSIS but now also seemed to be blaming Plaintiff THOMAS-OUBSSIS for requesting the accommodations in the first place.

45. Feeling rather distraught and defeated, later that same day, Plaintiff THOMAS-OUBSSIS decided to clarify everything that was discussed during the meeting and sent an email to Defendant BELLIARD, Defendant PETRONE, and Defendant MURRAY in which she stated:

> I just want to clarify what we went over today during our meeting as far as my request for accommodations piece is concerned.  The principal does not have to respond to my requests?  How will I know if the requests are approved or not?  How will I know if the counselor has been notified that the music she is blasting is trigger for my seizures?  [Defendant PETRONE] provided me with the information to request accommodations through 65 Court Street, but I believe that request says this should be put

9

> in if your request is denied and it can take up to 60 days to be approved.  I
> will submit the form with the paperwork from the doctor.  While I am
> waiting for their approval, what should I do in the meantime?  I also want
> to let you know that during my session today with my afternoon group the
> music was being played again….

46.   On or about November 13, 2017, after Marisol Palau again refused to stop playing loud

music, Plaintiff THOMAS-OUBSSIS began feeling sick and was forced to remove

herself from the environment to prevent a seizure.   Immediately thereafter, Plaintiff

THOMAS-OUBSSIS sent an email to Defendant PETRONE to inform her that, "I had to

leave the school because I feel sick.  [Marisol Palau] was playing music loudly and I

began to get auras.  I felt a seizure coming on and had to leave the room.  I began to

experience palpitations and start to feel like I was going to have a seizure.  I called my

doctor and she told me to come to her office.  I told Mrs. Callahan the assistant principal

that I was leaving."

47.   Next, on or about November 14, 2017, following Defendant PETRONE's advice,

Plaintiff THOMAS-OUBSSIS submitted an Accommodation Request form to

Defendants' HR Connect Medical Administration Office on which Plaintiff THOMAS-

OUBSSIS stated:

> I have epilepsy.  I am unable to be in the lunch room for prolonged periods
> of time to perform lunch duty or 'lunch counseling' as per the principal's
> request in the cafeteria due to the loudness in the room.  I am unable to be
> on the computer for extensive periods of time to complete google doc
> reports on behavior, attendance, and grades.  I am unable to complete work
> in current office due to loud music being played by school's counselor as
> this is a trigger for my seizures.  [I am requesting that I be permitted to]
> [p]rovide counseling to students in space other than lunch room.  Not be
> required to perform lunch duty due to noise level in cafeteria.  Provide
> lunch counseling in another space/room.  Have additional time to complete
> work on computer (1 week).  Be moved to a room away from blasting
> music or ask counselor to lower music or close her door when playing
> music.

48.     On or about November 16, 2017, although Defendant GASSETTO never even bothered
        to engage with Plaintiff THOMAS-OUBSSIS regarding her requested accommodations,
        Defendant GASSETTO began to enter Plaintiff THOMAS-OUBSSIS's office and
        proceed to stare at her for an extended period of time, causing Plaintiff THOMAS-
        OUBSSIS to feel extremely uncomfortable and intimidated.

49.     As a result of this blatant retaliatory intimidation, also on or about November 16, 2017,
        Plaintiff THOMAS-OUBSSIS filed a formal complaint of disability discrimination with
        Defendants' Office of Equal Opportunity ("OEO") in which she stated:

        > On October 26, 2017, I had an epileptic seizure at the school. After the
        > seizure I requested accommodations in order for me to do my job that
        > would not trigger more seizures. My request for accommodations were
        > ignored by the principal. One of the triggers was the playing of loud
        > music. The guidance counselor continued to play loud music in the room
        > which is shared by the counseling staff. I continued to request
        > accommodations and these requests were ignored by the principal. I made
        > a complaint and after the complaint was made the guidance counselor and
        > the principal would come into the room and stare at me while I was doing
        > my work or in sessions with the students. The stares were intimidating
        > and I feel threatened. Today is November 16, 2017 and my first request
        > for accommodations was October 31 and I have still not received a
        > response for my accommodations. I feel that I am being harassed with
        > these threatening stares and continuous playing of loud music in the office.

50.     The very next day, on or about November 17, 2017, Defendant GASSETTO summoned
        Plaintiff THOMAS-OUBSSIS to his office where he finally agreed to allow Plaintiff
        THOMAS-OUBSSIS to switch lunch counseling with recess counseling so that she could
        still meet with her students but would not be exposed to the excessive noise in the
        cafeteria.

51.     However, even though Plaintiff THOMAS-OUBSSIS's November 6, 2017 doctor's note
        explicitly stated that Plaintiff THOMAS-OUBSSIS "would like reduced amount of time

on the computer or extended time to submit any work that is needed to be done on the computer" because looking at a computer screen for prolonged periods can also trigger a seizure, Defendant GASSETTO flatly denied this request.

52.     In fact, Defendant GASSETTO told Plaintiff THOMAS-OUBSSIS that she could not have any extra time to enter her counseling notes into Jupiter Grades because teachers and administration must be able to access the information.  This made no sense to Plaintiff THOMAS-OUBSSIS since she already had all of her notes written down, and due to confidentiality concerns, she was the only person that was permitted to even view the notes.  Moreover, while Plaintiff THOMAS-OUBSSIS was working at MS 296 the year prior, she never once had to input her counseling notes into any computer database for others to view.

53.     Most disturbing, rather than asking Marisol Palau to stop playing the constant loud music in the office, Defendant GASSETTO instead told Plaintiff THOMAS-OUBSSIS that if Marisol Palau was playing loud music, Plaintiff THOMAS-OUBSSIS always has the option of going to an empty classroom, if one is available, to meet with her students. When Plaintiff THOMAS-OUBSSIS explained that there are not always available classrooms, and further, that she needs to be able to do her other work in her office, Defendant GASSETTO finally agreed to speak with Marisol Palau but refused to make any guarantees.

54.     Lastly, Defendant GASSETTO told Plaintiff THOMAS-OUBSSIS that going forward, she also had to be present during each hallway transition where approximately two-hundred and fifty (250) students change classes.  While Plaintiff THOMAS-OUBSSIS pleaded with Defendant GASSETTO for permission not to be in the hallway during class

12

transitions due to the excessive amount of noise in the narrow crowded hallway and the possibility of it triggering a seizure, Defendant GASSETTO refused and told her that she must be present during hallway transitions because "it is part of the school culture" and he was "not going to bend."

55.     On or about November 24, 2017, Plaintiff THOMAS-OUBSSIS sent another complaint to Defendants' OEO in which she stated, "I am not sure why [Defendant GASSETTO] is unwilling to provide me with accommodations and is placing me in an environment that can trigger a seizure."

56.     On or about November 27, 2017, Plaintiff THOMAS-OUBSSIS sent an email to Defendant GASSETTO stating:

> I am emailing you to let you know I will not be able to continue to participate in hallway transitions.  I definitely tried to, since you asked me to, but participating in this has resulted in a worsening of my migraines, which can trigger a seizure.  I have had to start taking additional migraine medications since participating in the transitions.  I definitely would not want to have another seizure at school.  The transitions take place in a very narrow hallway and they are very noisy and crowded.  This goes directly against my doctor's letter to you requesting specifically that I should not be placed in this type of environment.  I tried to do as you asked, since you said it was part of the school culture and I definitely want to be a team player, but I do not want to put my health at risk.

57.     On or about November 28, 2017, Plaintiff THOMAS-OUBSSIS met with Defendant GASSETTO during which he informed Plaintiff THOMAS-OUBSSIS that he was not going to provide her with any more accommodations, that she must be present for hallway transitions, and instructed her to be evaluated by a NYCDOE doctor.  Defendant GASSETTO ended the meeting by telling Plaintiff THOMAS-OUBSSIS, "At this point it seems like anything will trigger a seizure.  This is a middle school and you might be in the wrong setting.  **I am done making accommodations** and I'm not going to do

anything else until a DOE doctor tells me that I have to do it."  Plaintiff THOMAS-OUBSSIS was extremely hurt and offended by such a comment.

58.     As such, on or about November 29, 2017, Plaintiff THOMAS-OUBSSIS sent another email to Defendant GASSETTO in which she stated:

> I also want to let you know that I was very hurt and offended by the comments you made. Your implications about me working in a middle school with my disability was very insulting and I felt was extremely discriminatory.  I have been in the education field for 18 years and have worked with grades pre-k through 8 and my disability does not and has never stopped me from doing my job.  My principals have always made small accommodations so that I could perform at my best as an educator.  I asked for 3 accommodations that do not put a hardship on you in any way. I left that meeting feeling insulted and humiliated.  "Anything can trigger a seizure" for me, this is not true.  I am not in the "wrong setting in a middle school" [Defendant GASSETTO], what I asked for was within my rights according to the ADA.  I feel very hurt and discriminated against based on your words and actions towards me over the last few weeks and after yesterday your statements were very hurtful.

59.     Later that same day, also on or about November 29, 2017, Plaintiff THOMAS-OUBSSIS filed another complaint of disability discrimination and retaliation with Defendants' OEO in which she stated:

> I met with the [Defendant GASSETTO] on 11/28/17 and I was told that he was not going to follow anymore accommodations for me.  He also said that he will not accommodate me for hallway transitions, which has nothing to do with my job description and violates my doctor's orders for accommodations.  [Defendant GASSETTO] said at this point it seems like "anything will trigger a seizure" and that this is "a middle school and that I might be in the wrong setting."  He said he is "done making accommodations" and he's not going to do anything until a DOE doctor tells him he has to do it. … I have made several complaints regarding the lack of accommodations that have been made for me and the fact that I have been placed in an environment that is not safe, despite my doctor's request.  I believe I am being targeted for complaining.  I suddenly began having problems accessing my students files on Monday afternoon (11/27/17) after making a complaint about being asked to do hall duty despite it being a direct violation of what my doctor requested.  I emailed [Defendant GASSETTO] on Monday 11/27/17 about not being able to do

14

the assigned hall duty and later that day my entire student list of names were gone and my logs that were entered were also gone. I asked my co-workers if they had the same problems and they said no. On Tuesday, 11/28/17, the same problem occurred, but this time my co-workers also had some problems with Jupiter (not the same extent as mine), but they were able to access their students. Today, I came in and I still have no access to my student and my logs are all gone. My co-workers are able to access Jupiter grades. I am the only one still experiencing problems. I emailed the technology teacher about it and he did not respond. When he did respond he said he will look at it later, but never came. I believe this has been done on purpose by administration. I really believe this is a form of retaliation, since one of my requests for accommodations is an extension to submit my logs into Jupiter grades.

I would like [Defendant GASSETTO] to stop forcing me to do hallway duty and acknowledge my doctor's letter because it has nothing to do with my job as a counselor. I would also like [Defendant GASSETTO] to stop making discriminatory comments about my epilepsy and stop implying that I should not be a counselor in a middle school because I have epilepsy. His statements are discriminatory and were insulting and hurtful. My disability has nothing to do with my job performance and my accommodations in no way put a hardship on him or prevent me from doing my job. I do not have any paper documents. I do have screenshots of jupiter grades, but due to student confidentiality I am not able to submit that. I do have a witness that was present when [Defendant GASSETTO] made these statements to me regarding my disability and not being in the right setting, and anything triggering a seizure, etc. I can submit that if necessary.

60.    On or about November 30, 2017, Plaintiff THOMAS-OUBSSIS also complained about the disability discrimination to Defendant BELLIARD, Defendant PETRONE, and Defendant MURRAY, to which Defendant MURRAY responded and stated, "I am officially telling you that you are not to do hall duty."

61.    On or about January 2, 2018 and again on or about January 9, 2018, for no apparent reason, Marisol Palau intentionally played extremely loud jazz music in Plaintiff THOMAS-OUBSSIS's presence, forcing Plaintiff THOMAS-OUBSSIS to leave the room to prevent her from having a seizure.

62.     On or about January 10, 2018, Plaintiff THOMAS-OUBSSIS overheard Marisol Palau telling the music teacher that, Plaintiff THOMAS-OUBSSIS's "demands are crazy and I should not have to follow them."   Upon noticing Plaintiff THOMAS-OUBSSIS, Ms. Palau abruptly stopped the conversation.

63.     On or about January 11, 2018, Plaintiff THOMAS-OUBSSIS submitted another ADA Medical Accommodation request to Glenn Darien at Defendants' HR Connect Medical Administration Office, in which she requested: 1) not to be required to perform lunch duty/hall duty due to excessive loud noise; 2) have additional time to complete/submit notes on computer, so that she is not on the computer for long periods of time; and 3) not be exposed to loud music in the work space.  Plaintiff THOMAS-OUBSSIS also wrote, "I have epilepsy/migraines and I am unable to be in the hall/cafeteria for long periods of time to perform lunch duty or 'lunch counseling' due to the loudness in the room.  I am unable to be on the computer for extensive or prolonged periods of time, especially when entering data into spreadsheets."

64.     On or about January 16, 2018, Plaintiff THOMAS-OUBSSIS submitted another complaint to Defendants' OEO in which she complained about all of the retaliation that had occurred since she filed her last complaint with Defendants' OEO on or about November 29, 2017.

65.     On or about January 19, 2018, Plaintiff THOMAS-OUBSSIS submitted additional medical documentation to Defendants' HR Connect Medical Administration Office in support of her request for reasonable accommodations.

66.     Then, only four (4) days after receiving the medical documentation from Plaintiff THOMAS-OUBSSIS, on or about January 23, 2018, Defendants' HR Connect Medical

Administration Office flatly denied Plaintiff THOMAS-OUBSSIS's accommodation request and sent Plaintiff THOMAS-OUBSSIS a notice stating, "This is to advise you that your request for a Medical Accommodation has been denied for the following reason:  **Not medically warranted."** (emphasis in original).

67.     As if being arbitrarily denied an accommodation isn't bad enough, on or about February 12, 2018, Marisol Palau began to aggressively retaliate against Plaintiff THOMAS-OUBSSIS for her complaints to OEO by physically blocking Plaintiff THOMAS-OUBSSIS from being able to enter her office.

68.     Absolutely distraught, on or about February 12, 2018, Plaintiff THOMAS-OUBSSIS filed another complaint of retaliation with Defendants' OEO in which she stated:

> When trying to enter the office, Marisol Palau was standing in front of the office door at approximately 9:35 am, which was closed and she had both arms spread across the office door.  This prevented me from opening the door.  I said excuse me and Ms. Palau refused to move.  I said excuse me again and Ms. Palau moved slightly causing me to have to slide past her in order to enter the office.  I am being retaliated against for filing a complaint with DOE OEO and for filing a complaint with EEOC.  Ms. Paula was named in the complaint.  I am epileptic and I complained about Ms. Palau playing extremely loud music and making threatening comments in the shared office.  This situation has created a hostile environment and I am becoming very fearful for my safety.  It has come to the point where I don't feel safe being alone in the office with Ms. Palau.

69.     Fearing for her safety, the following day, on or about February 13, 2018, Plaintiff THOMAS-OUBSSIS filed a police report with the New York City Police Department ("NYPD") in which she reported Marisol Palau's harassment and assault from the day earlier.

70.     On or about March 1, 2018, feeling at this point that she had nothing at all to lose, Plaintiff THOMAS-OUBSSIS submitted yet another doctor's note to Defendants' HR

Connect Medical Administration Office, this time from Dr. Jillian L. Rosengard, M.D., stating, "I am a neurologist specializing in the epilepsy, and [Plaintiff THOMAS-OUBSSIS] is under my care for the management of her epilepsy and migraines. I believe that her seizures are triggered by her migraines. This is a well-described though uncommon neurologic phenomenon. I believe that it is medically appropriate to allow accommodations at work to prevent her migraines and, by extension, her seizures. The accommodations which she is requesting and which I agree are reasonable include: 1. Adequate lighting in her office and avoidance of flashing lights. 2. Limited exposure to loud music or loud sounds. 3. Allow her to take breaks from using the computer if she starts to have a migraine."

71. Unfortunately, rather than discussing possible alternative accommodations with Plaintiff THOMAS-OUBSSIS and trying to find accommodations that work for all parties involved, Defendants have instead either ignored most of her requests or simply denied them.

72. While Plaintiff THOMAS-OUBSSIS's requests could have easily been accommodated, **Defendants have completely refused to reasonably accommodate Plaintiff THOMAS-OUBSSIS's disability**, instead forcing her to take multiple leaves of absence and miss work rather than suffer another seizure.

73. Defendants have arbitrarily refused to grant Plaintiff THOMAS-OUBSSIS these reasonable accommodations, even though they would pose **no undue burden** to Defendants.

74. Defendants did not engage, and have not engaged, Plaintiff THOMAS-OUBSSIS in any discussion regarding possible alternative reasonable accommodations for Plaintiff

THOMAS-OUBSSIS or offer any alternatives to her present working arrangement that would enable Plaintiff THOMAS-OUBSSIS to continue her employment and not suffer additional seizures.

75.   Rather than engaging in the interactive process and discussing possible alternative ways to accommodate Plaintiff THOMAS-OUBSSIS's disability, Defendants figured it was easier to simply deny her requests and refuse to provide the accommodations requested by her doctor.

76.   Plaintiff THOMAS-OUBSSIS is distraught that, without providing any valid reason or justification, Defendants are simply refusing to provide Plaintiff THOMAS-OUBSSIS with the necessary and reasonable accommodations for her disability.

77.   Plaintiff THOMAS-OUBSSIS's disability is an impairment that substantially limits one or more of her major life activities within the meaning of §12102(1)(A) of the ADA, including but not limited to, the operation of her nervous system and neurological functions.

78.   Plaintiff THOMAS-OUBSSIS is a qualified individual who can perform the essential functions of her employment with a reasonable accommodation as defined by §12111(8) of the ADA.

79.   Plaintiff THOMAS-OUBSSIS has been offended, disturbed, confused, and humiliated by Defendants' blatantly unlawful, discriminatory, and retaliatory actions.

80.   Plaintiff THOMAS-OUBSSIS's performance has been, upon information and belief, above average during the course of her employment with Defendants.

81.   Plaintiff THOMAS-OUBSSIS has been unlawfully discriminated against, retaliated against, humiliated, and degraded, and as a result, suffers loss of rights, emotional

distress, loss of income and earnings.

82. Defendants' actions and conduct were and are intentional and intended to harm Plaintiff THOMAS-OUBSSIS.

83. As a result of Defendants' actions, Plaintiff THOMAS-OUBSSIS feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

84. Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Plaintiff THOMAS-OUBSSIS demands Punitive Damages as against all Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT (Not Against Individual Defendants)

85. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

86. Plaintiff claims Defendants violated the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (*ADA*), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

87. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

88. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her disability and failing to provide reasonable accommodations for

20

her disability.

89.    As such, Plaintiff has been damaged as set forth herein.

### AS A SECOND CAUSE OF ACTION FOR RETALIATION
### UNDER THE AMERICANS WITH DISABILITIES ACT
### (Not Against Individual Defendants)

90.    Plaintiff repeats and realleges each and every paragraph above as if said paragraph was

more fully set forth herein at length.

91.    The ADA prohibits retaliation, interference, coercion, or intimidation.

92.    42 U.S.C. § 12203 provides:

a)    Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

b)    Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

93.    Defendants violated this section as set forth herein.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

94.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above

paragraphs of this Complaint as if more fully set forth herein at length.

95.    The New York City Administrative Code §8-107(1) provides that "It shall be an unlawful

discriminatory practice: (a) For an employer or an employee or agent thereof, because of

the actual or perceived age, race, creed, color, national origin, gender, disability, marital

status, sexual orientation or alienage or citizenship status of any person, to refuse to hire

or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

96.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by discriminating against Plaintiff because of her disability.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

97.   Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

98.   The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

99.   Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

100.  Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

101.  The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

102.    Individual Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and retaliatory conduct.

**AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**

103.    Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104.    The New York City Administrative Code §8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a.    An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b.    An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1.    the employee or agent exercised managerial or supervisory responsibility; or

        2.    the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c.   An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

105.   Defendants violated the section cited herein as set forth.

## JURY DEMAND

106.   Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.   Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA and the NYCHRL, in that Defendants discriminated against Plaintiff on the basis of her disability, failed to provide Plaintiff with reasonable accommodations for her disability, and retaliated against Plaintiff for complaining of disability discrimination;

B.   Issuing an injunction and ordering Defendants to provide Plaintiff with reasonable accommodations for her disability;

C.  Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

D.  Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.  Awarding Plaintiff punitive damages;

F.  Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.  Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       March 5, 2018

                                        **LAW OFFICE OF
                                        YURIY MOSHES, P.C.**

                        By:     _____
                                Alex Umansky (AU7961)
                                *Attorneys for Plaintiff*
                                322 West 48th Street, 6th Floor
                                New York, New York 10036
                                (718) 504-6090
                                aumansky@mosheslaw.com

EEOC Form 161 (11/09)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC")

## DISMISSAL AND NOTICE OF RIGHTS

| To: **Karen Thomas-Oubssis**<br>**3911 Murdock Avenue**<br>**Bronx, NY 10466** | From: **New York District Office**<br>**33 Whitehall Street – 5th Floor**<br>**New York, NY 10004** |
|---|---|

| ☐ | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | E-Mail: |
|---|---|---|
| **520-2018-01245** | **Patrick Sanford, Federal Investigator** | **Patrick.Sanford@ eeoc.gov** |

### THE EEOC IS CLOSING ITS INVESTIGATION OF THIS CHARGE OF DISCRIMINATION ("CHARGE") FOR THE FOLLOWING REASON:

☐ The facts alleged in the Charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ The allegations in the Charge did not involve a disability as defined by the Americans with Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your Charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your Charge

☒ The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the Respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this Charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this Charge.

☐ Other :

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

_____

**Kevin J. Berry,**
**District Director**

**February 20, 2018**

*(Date Mailed)*

Enclosures(s)

cc:     **Respondent:**
**New York City Department of Education**
**Office of Legal Services – Room 308**
**52 Chambers Street**
**New York, NY 10007**

**Charging Party's Attorney:**
**Law Offices of Yuriy Moshes, P.C.**
**322 West 48th Street – 6th Floor**
**New York, NY 10036**
**(888) 445-0234**